IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:18-cv-120-BO

| | | |
|---|---|---|
| RAQUAY EDDIE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | O R D E R |
| | ) | |
| CITY OF WHITEVILLE and J. ATKINSON, | ) | |
| individually and officially, CARLTON | ) | |
| WILLIAMSON, individually and officially, | ) | |
| and CLAY COLLIER, individually. | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the Court on defendants' motions for summary judgment [DE 56, 59] and plaintiff's motion for an extension [DE 67]. Plaintiff's motion [DE 67] is GRANTED. The summary judgment motion filed by Collier and Williamson [DE 56] is DENIED WITHOUT PREJUDICE. The summary judgment motion filed by Atkinson and the City of Whiteville [DE 59] is DENIED with respect to Counts One through Three and DENIED WITHOUT PREJUDICE on Count Four.

## BACKGROUND

Plaintiff was involved in a fight outside a bar in Whiteville, North Carolina. J. Atkinson, who at the time was a Whiteville police officer, witnessed the fight, radioed for help, and moved in to arrest plaintiff, commanding him to stop fighting. Plaintiff heard Atkinson's order, recognized him as a police officer, stopped fighting, and understood he was going to be arrested.

The parties offer divergent accounts of what happened next. Plaintiff claims that Atkinson rushed him at full speed, immediately wrapped his arm around plaintiff's neck, and after a

momentary struggle in which plaintiff pulled away in an attempt to maintain his balance, Atkinson swept plaintiff to the ground, breaking his leg. Atkinson claims that he went to handcuff plaintiff, who ignored his orders and resisted arrest. After plaintiff's repeated attempts to pull his arms away, the two ended up on the ground and plaintiff was arrested. At some point, plaintiff's leg was broken.

Following the incident, in 2017, plaintiff was charged with simple assault, resisting, obstructing and delaying a police officer, and possession of marijuana. After the charges were filed, but before trial, Atkinson left the Whiteville Police Department to take a law enforcement position elsewhere. When the charges against plaintiff were called for trial, Atkinson did not appear, and the charges were dismissed.

Plaintiff then filed this lawsuit in May 2018 in the Superior Court of Columbus County, North Carolina, seeking damages for the allegedly excessive physical force Atkinson used while arresting him in November 2016. Defendants removed to this Court.

Clay Collier and Carlton Williamson are lawyers for Atkinson and the City of Whiteville. After plaintiff filed this lawsuit, Collier and Williamson met with Jon David, the District Attorney for Columbus County. Following their meeting, Mr. David made the decision to prosecute plaintiff with refiled criminal charges. Plaintiff was served with the refiled charges on January 5, 2019 and tried before a North Carolina state judge on February 7, 2019. Plaintiff was convicted of resisting an officer. Plaintiff has appealed for a *de novo* trial in state superior court.

Plaintiff then moved to amend his complaint to add Collier and Williamson as defendants and to include an abuse of process claim against all four defendants. Plaintiff alleges that defendants lobbied to have the criminal charges reinstated as leverage over plaintiff in this civil suit. The Court granted plaintiff's motion to amend in April 2019.

Plaintiff's amended complaint brings the following claims: (1) assault and battery against Atkinson in both his individual and official capacities; (2) negligence against Atkinson in his official capacity; (3) excessive force, in violation of the Fourth Amendment, brought pursuant to 42 U.S.C. § 1983 against Atkinson in his individual capacity; and (4) abuse of process against all of the defendants. The abuse of process claim is brought against the City of Whiteville, Atkinson, and Williamson in their official capacities and Williamson and Collier in their individual capacities.

Discovery ended on September 18, 2019. On October 18, 2019, all four defendants moved for summary judgment. DE 56, 59. The motions are ripe of disposition.

## **DISCUSSION**

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In determining whether a genuine issue of material fact exists for trial, a court must view the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party . . . and [a] fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted).

## I. Counts One through Three

The evidence marshalled by the parties largely consists of Atkinson's and plaintiff's dueling depositions. From these, it is clear there is no dispute as to the following facts. On November 5, 2016, just after midnight, plaintiff was a patron at Ivy's, a bar and restaurant in Whiteville, North Carolina. Plaintiff stepped outside, where he encountered another patron with whom he had a prior personal dispute. The two started physically fighting. Plaintiff quickly got the upper hand in the fight and was punching his opponent—who had fallen to his knees and was covering his head—from above. Atkinson was near Ivy's at that time and observed the fight. He reported the incident on his radio and exited his patrol car to approach. As Atkinson approached the fight, he yelled "stop." The parties agree that plaintiff heard Atkinson, stopped fighting, recognized Atkinson as a police officer, and understood that he was going to be arrested. DE 60, ¶ 4; DE 69 ¶ 4. There is a genuine dispute of fact as to what followed.

At his deposition, plaintiff testified that he turned and faced Atkinson, holding his hands up, palms showing, to allow Atkinson to arrest him. Eddie Dep. at 125–26, DE 58-5. Plaintiff testified that Atkinson ran at him full speed. *Id.* at 134. Plaintiff testified that Atkinson grabbed his left arm, ripped it down, then wrapped his arm around plaintiff's neck. *Id.* at 131–35. The force from Atkinson's maneuver caused plaintiff to begin to fall backwards, in response to which plaintiff jerked his left arm away from Atkinson in an attempt to catch his balance. *Id.* at 135. Atkinson, who maintained his arm around plaintiff's neck, then swept plaintiff to the ground. *Id.* at 140–42. Atkinson was then on plaintiff's back, saying "stop resisting," while attempting to put handcuffs on him. *Id.* at 143. Plaintiff testified that Atkinson gave no additional warnings or commands between his initial warning to "stop" and when plaintiff was subsequently brought to the ground. *Id.* at 144. Plaintiff testified that he did not resist while on the ground. *Id.* at 145.

4

Sergeant Brisson, who arrived at the scene within seconds and witnessed the arrest after plaintiff and Atkinson fell on the ground, was also deposed. She testified that when she pulled up to the scene, she saw Atkinson laying on his side behind plaintiff, controlling plaintiff, with his arm around plaintiff's neck area. Brisson Dep. at 13–14, DE 59-3.

Plaintiff also gave a recorded statement to a Lt. Jackson at the hospital soon after the arrest. This statement is largely consistent with his deposition. *See* Eddie Statement, DE 60-4. Plaintiff stated that Atkinson started choking him immediately upon arriving at the scene to make the arrest. *Id.* at 2, 4. Plaintiff stated that he objected to how aggressively Atkinson handled him, particularly being choked, and so he tried to separate himself from Atkinson—then Atkinson slammed him to the ground. *Id.* Plaintiff stated he did not struggle while on the ground. *Id.* at 5.

Atkinson's deposition testimony gives a different account. Atkinson testified that as he approached the scene, plaintiff had his hands down, palms facing towards Atkinson. Atkinson Dep. at 38, DE 58-2. Atkinson ordered plaintiff to turn around and place his arms behind his back. *Id.* Plaintiff did not comply. *Id.* At that point, Atkinson grabbed plaintiff's left wrist. *Id.* Plaintiff pulled away, but Atkinson was able to grasp plaintiff's coat sleeve. *Id.* The two did a "couple of 360s" with Atkinson grasping plaintiff's coat sleeve. *Id.* Atkinson attempted an arm bar takedown but could not execute it. *Id.* at 38–39. Then, in an attempt to gain control of plaintiff, Atkinson "bear hugged" him. *Id.* In the process, the two fell to the ground. *Id.* Atkinson testified that plaintiff continued to resist arrest while on the ground. *Id.* at 39–40.

Atkinson submitted an affidavit which is consistent with his deposition. DE 74-1.

5

### a. § 1983

Plaintiff brings a Fourth Amendment excessive force claim against Atkinson in his individual capacity. Atkinson argues he is entitled summary judgment because he is protected by qualified immunity and did not use excessive force.

In assessing qualified immunity, courts employ a two-part test that "asks first whether a constitutional violation occurred and second whether the right violated was clearly established." *Melgar v. Greene*, 593 F.3d 348, 353 (4th Cir. 2010) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)). A court may exercise its discretion to decide which prong of the analysis to consider first. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Addressing the second prong of the test first, it was clearly established at the time of the incident that the force employed to effectuate an arrest must be objectively reasonable under the circumstances. *Graham v. Connor*, 490 U.S. 386, 388 (1989); *Jones v. Buchanan*, 325 F.3d 520, 531 (4th Cir. 2003); *Rowland v. Perry*, 41 F.3d 167, 172–73 (4th Cir. 1994).

The issue, then, is whether the force Atkinson used to arrest plaintiff was objectively unreasonable under the circumstances. Where a defense of qualified immunity has been raised, viewing the facts and drawing the reasonable inferences in the light most favorable to the plaintiff generally means adopting the plaintiff's version of the facts. *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008); *Jones*, 325 F.3d at 523.

"[O]bjective reasonableness turns on the facts and circumstances of each particular case." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). This determination must be made "from the perspective of a reasonable officer on the scene, including what the officer knew at the time[.]" *Id.* Some of the factors that bear on reasonableness are the relationship between the

force needed and the force used, the extent of plaintiff's injury, the officer's effort to temper or limit the amount of force, and the security problem and threat perceived by the officer. *Id.*

Viewing the evidence in the light most favorable to plaintiff, the Court finds that the force employed by Atkinson was objectively unreasonable under the circumstances. This evidence shows that as Atkinson approached, plaintiff raised his hands in the air, palms out, signaling that he was submitting to Atkinson's authority and was ready to be arrested. But even after plaintiff positioned himself as described, Atkinson made physical contact with plaintiff at full speed and twisted plaintiff into a position where his arm was around plaintiff's neck. Then, with his arm still around plaintiff's neck, Atkinson swept plaintiff's legs out from under him, bringing him to the ground, and breaking his right leg.

Plaintiff's crime of battery was unquestionably serious. But it is objectively unreasonable for an officer to seize the neck of an individual who has heeded the officer's warning to "stop" and has presented his body in a submissive posture. Moreover, the evidence shows no additional efforts by Atkinson to temper the amount of force.

Atkinson repeatedly points to the fact that plaintiff snatched his arm away after initial contact and that there is no evidence that Atkinson viewed this as anything other than an attempt to resist being handcuffed. But this argument asks the Court to do what *Rowland* rejected, specifically, to analyze each instance of force as a separate incident instead of viewing the full context. 41 F.3d at 173. Plaintiff's instinctive reaction of self-preservation to disproportional force does not negate his claim. *Id.* at 174.

In his deposition, District Attorney David testified that there had been two previous homicides involving patrons of Ivy's, and that, because it turned into a nightclub after hours, the police were especially nervous about reported incidents at Ivy's. DE 58-4. Atkinson was aware

7

of at least one of the homicides. DE 58-2 at 33. But nothing in the evidence suggests that plaintiff had any connection to the homicides. Knowledge of the prior homicides does not give Atkinson license to use the degree of force employed on an arrestee who had submitted to his authority.

Given the evidence, it is clear that genuine issues of material fact exist and Atkinson is not entitled to summary judgment as a matter of law.

### b. Negligence; Assault & Battery

The Court has determined that the federal excessive force claim survives summary judgment. Therefore, the state-law claims of negligence and assault and battery survive as well. *Rowland*, 41 F.3d at 174.

Plaintiff's claim for assault and battery is brought against Atkinson in both his individual and official capacities. His negligence claim is brought against Atkinson in his official capacity only. The official capacity claims are, in effect, *respondeat superior* claims against the City of Whiteville. *Thompson v. Town of Dallas*, 142 N.C. App. 651, 654 (2001) ("[A] public officer sued in his official capacity is simply another way of suing the public entity of which the officer is an agent."). The City of Whiteville has waived its governmental immunity pursuant to N.C. Gen. Stat. Ann. § 160A-485 through its participation in the Interlocal Risk Finance Fund of North Carolina (IRFFNC) and is therefore not immune from suit for plaintiff's official capacity claims. DE 66-7, 66-8, 66-9; *Thompson*, 142 N.C. App. at 655. In addition, the evidence, when viewed in the light most favorable to plaintiff, defeats Atkinson's public official immunity for plaintiff's individual capacity assault and battery claim. *Thompson*, 142 N.C. App. at 656.

## II. Count Four

Plaintiff brings an abuse of process claim against all four defendants for the reinstatement of previously dismissed charges, which he contends were reinstated in order to gain leverage over him in this civil proceeding. As of November 2019, when he filed his response brief to defendants' summary judgment motions, plaintiff was appealing for a *de novo* trial in state superior court. Given the posture of the charges, the Court is not in a position to rule on defendants' motions on the abuse of process claim. As to Count Four, defendants' motions for summary judgment are denied without prejudice.

## CONCLUSION

For the above reasons, the motion for summary judgment filed by Atkinson and the City of Whiteville [DE 59] is DENIED with respect to Counts One through Three and DENIED WITHOUT PREJUDICE with respect to Count Four. The summary judgment motion filed by Collier and Williamson [DE 56] is DENIED WITHOUT PREJUDICE. Plaintiff's extension motion [DE 67] is GRANTED.

SO ORDERED, this __10__ day of March, 2020.

_Terrence W. Boyle_
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE